## In re RICE'S ESTATE. RICE v. RICE et al.

No. 7029. Decided June 11, 1947. (182 P. 2d 111.)

See 21 C. J. S. Courts, Sec. 137. Application of doctrine of res judicata to cause of action omitted from issue through fraud, note, 2 A. L. R. 534. See, also, 21 Am. Jur. 653; 30 id. 941.

*Shirley P. Jones,* of Salt Lake City, for appellant.

*Jesse R. S. Budge,* of Salt Lake City, for respondent.

LATIMER, Justice.

This case concerns the distribution of certain portions of the estate of David L. Rice, deceased, who died in Davis County, Utah, on February 14, 1945, leaving a will dated April 16, 1944. This will was admitted to probate April 7, 1945, and under the terms thereof, Erma Rice, daughter of deceased, was named executrix. All of the estate, with the exception of certain devises and legacies, only one of which is of importance in this action, was distributed to Erma Rice as trustee for the heirs.

The particular devise with which this case is concerned, is that in favor of Austin Rice, son of deceased, brother of the executrix, and petitioner herein. This devise reads:

"I give and bequeath to my son Austin Rice the land, approximately 27 acres in Section 31, Township 3 North, Range 1 east, Salt Lake Meridian, now occupied by him, which shall be his full distributive share of my estate and he shall not have any other additional share or participate in any distribution thereof."

After having duly qualified and followed the appropriate statutory procedure, Erma Rice, on December 12, 1945, filed her final account and petition for distribution. Statutory requirements as to notice were complied with. In her petition the executrix prayed that the court distribute to Austin Rice, petitioner herein, "as his full and only distributive share of said decedent's estate" certain described real property. Descriptions of two tracts of land, one containing 24.71 acres and the other 3 acres more or less, were set forth in the petition, and it was made to appear that this was the land the deceased intended to convey to petitioner. The petition for distribution, however, failed to mention a certain 3.85 acres on which petitioner claims his barn housing his hay, farm inplements, and cattle is located. The petition also failed to make any mention of any water rights appurtenant to this land. The decree of distribution, which was entered on the 26th day of December, 1945, decreed the property as described in the petition.

The petitioner herein did not discover the claimed discrepancy and so did nothing about it until some time during the month of August, 1946, when he became involved in a dispute with one of executrix' agents over the use of the water. He was then informed that he had not been decreed the water or the 3.85 acres of land that his barn was on. He thereupon, and within a reasonable time, filed his petition in the District Court of Davis County, Utah, praying for a correction of the decree of distribution. He alleged in substance that the petition for decree of distribution had not properly described the lands devised to him by his father and that it did not decree to him the water and water rights appurtenant to the land.

The executrix and trustee appeared in the action, demurred generally to the petition and specially demurred upon the ground that the court had no jurisdiction over the subject matter. The demurrer was sustained without any indication by the court as to whether its decision was based

on either or both grounds. The court did, however, grant the petitioner ten days within which to file an amended petition.

On November 25, 1946, petitioner filed his amended petition, alleging in substance the following facts:

That the executrix in her petition for distribution submitted to the court a description of land purporting to be the property devised to petitioner by the terms of the will, and that court distributed the land as described in the petition. The land so decreed to the petitioner is not all of the land or property intended to be devised to him by his father. That the terms of the will provided that petitioner should be bequeathed the land "now occupied by him," and that the petitioner occupied other and additional land to that described in the decree. That the additional land, other than that discribed in the decree of distribution was the 3.85 acres of land across the road from that discribed in the decree, on which stood this petitioner's barn housing his hay, farm implements and cattle. That neither the petition for distribution nor the decree of distribution made any mention of water or water rights appurtenant to and a part of the land, and which had been appurtenant to and used by petitioner and his grantor for more than 44 years.

That the failure of the executrix to include the additional land and water rights in her petition for distribution was intentional and for the purpose of attempting to deceive the court and to defraud the petitioner. That after the death of the testator, David L. Rice, and before her appointment as executrix, Erma Rice went to the home of petitioner and told him she had read the will of their father and that said will devised to him the farm he was then occupying, which Erma Rice knew included the 3.85 acres now in dispute, as well as the water and water rights enjoyed and used by said lands. That petitioner and his wife went to the Courthouse at Farmington, Davis County, Utah, upon the day set for the hearing of the petition for distribution, December 26, 1945, and were met in the hallway outside

of the courtroom by the executrix, Erma Rice, who advised them that it would be a waste of time for them to attend the hearing or to be present thereat, and that they did not need to do so because she had taken care of everything for them and that they would get the farm they then occupied as provided for in the will. Relying upon such respresentations of Erma Rice, the petitioner and his wife did not attend the hearing of the petition for distribution, and did not know the decree was to provide for less property than that occupied by petitioner. That the land bequeathed unto petitioner is of little or no value without water and without the disputed portion of land the remaining property is greatly depreciated. That the executrix has refused to permit the petitioner to use the water on the land, upon the claim and contention that the same was not intended to be bequeathed by the deceased, and was not included in the decree of distribution. That the land on which petitioner's barn is situated is shown on the records of Davis County as being in the name of Erma Rice, Trustee, and not in the name of the petitioner, notwithstanding the petitioner is the true owner of the same. That the water appurtenant to and used upon the lands aforementioned are not shown upon the records as having been conveyed with said lands, except insofar as the decree of distribution may be held to have effected such transfer.

To the above described amended petition of Austin Rice the executrix, Erma Rice, demurred generally and on the ground that the court was without jurisdiction in the matter. After a hearing the Trial Court sustained the general demurrer and dismissed the petition. No ruling appears in the record on the special demurrer to the court's jurisdiction. From such judgment, petitioner appeals.

In this appeal the appellant assigns error on the part of the court in sustaining the general demurrer to the amended petition, and dismissing the action without granting leave to amend. The respondent, in turn, assigns error in that the court erred in not sustaining the demurrer on

the ground that the court had no jurisdiction of the subject matter of the action. These matters will be treated in the reverse order.

The question of the jurisdiction and powers of District Courts in this state have been before this court on numerous occasions and particularly with respect to the powers, rights, and remedies of a court when it is dealing with an action brought under the provisions of the Code of Civil Procedure, the Code of Criminal Procedure, or the Probate Code. There is little need to again discuss the extent of the jurisdiction granted to District Courts by the Constitution of the State of Utah and the statutes consistent therewith. That the District Courts have original jurisdiction in matters, civil, criminal, probate, and guardianship, is admitted. Where the parties in this action disagree is on the procedure and pleadings necessary to invoke the jurisdiction of the court and permit it to proceed with a trial of the action on the merits.

Mr. Justice Wolfe in a concurring opinion in the case of *McLaren* v. *McLaren,* 99 Utah 340, 106 P. 2d 766, collates the Utah cases discussing the nature and extent of probate and legal jurisdiction of District Courts. Since that case was decided, this court has passed on this same question in the following cases: *In re Clift's Estate,* 101 Utah 343, 122 P. 2d 196; *In re Martin Estates,* 109 Utah 131, 166 P. 2d 197; *Nielson's Estate* v. *Nielson,* 107 Utah 564, 155 P. 2d 968. Some of the cases touched on in the discussion by Mr. Justice Wolfe in the *McLaren* case will be referred to and the three later ones herein cited will be discussed.

In the case of *In re Thompson's Estate,* 72 Utah 17, 269 P. 103, 109, this court passed on the powers exercised by courts in cases having to do with rights and remedies available under the provisions of either the Code of Civil Procedure or the Probate Code. Said the Court:

"Further as to this: The petition as filed was entitled 'In the District Court of the Third Judicial District in and for Salt Lake County, State of Utah.' In such particular it was entitled as any independent action would have been. The cause, however, was entitled, 'In the Matter of

the Estate of Ezra Thompson, Deceased'; but the real parties to the cause were the state treasurer on the one side and the heirs of the deceased on the other. The issues and controversy as presented by the petition and the answer thereto were between such parties, and were entertained, tried, and determined as an equitable action, and as completely as though the state treasurer had been styled the plaintiff and the heirs the defendants in the cause. The powers exercised by the court in the cause, the procedure adopted, and all of the rights and remedies accorded the parties, were the same as, and no less or different than, had the parties been designated the treasurer as plaintiff and the heirs as defendants in the cause. Thus, looking at substance and not to mere form, the cause as between the parties may well be regarded as one in equity and as it was entertained and tried by the court. In such view it may well be considered that the court had jurisdiction, not only of the parties, which is not disclaimed, but also of subject-matter. This assignment is therefore also overruled."

If we test the present action by the rule quoted, we find a striking similarity. Here the petition as filed was entitled "In the District Court of Davis County, Utah." This cause ,too, was similarly entitled "In the matter of the Estate of David L. Rice, Deceased." The real parties to the cause were the petitioner and the executrix-trustee. The issues and controversy were between these parties and the cause of action was alleged in the petition with the same particularity as though the petitioner had been styled plaintiff and the executrix-trustee as defendant, and the pleading designated "Complaint." Thus, looking at the substance of the pleadings rather than at the caption of the action, the cause of action must be regarded as an equitable action to set aside the decree of distribution on the grounds of fraud.

Because of the analysis made by Mr. Justice Wolfe in the case of *McLaren* v. *McLaren,* supra, it is well to consider the reasoning in that opinion, which is illustrated by the following quotation [99 Utah 340, 106 P. 2d 771]:

"While this court has stated that matters which are peculiarly of a probate nature must be tried as probate matters and matters which are of a non-probate nature, such as an action to quiet title, to set aside a deed or for judgment on a note, must be tried by the court in the exercise of its non-probate function [see *In re Agee's Estate,* 69 Utah 130, 252 P. 891, 50 A. L. R. 641], supra, although there the court

in probate was permitted to try a contested claim for attorney's fees earned as attorney for the administrator it has not said that the District Court sitting as a court of plenary jurisdiction could not consider as addressed to its non-probate side a matter not cognizable in probate, if the allegations were present to invoke the non-probate jurisdiction. Noted should be the distinction between (1) probate matters tried as non-probate civil matters and civil matters tried as probate matters, and (2) probate matters properly tried as probate matters although apparently labeled as non-probate, and matters non-probate tried as such but labeled as probate matters. The latter types of cases require only a ministerial change in the clerk's office including, perhaps, an adjustment of filing fees. The former involves entertaining in actual probate proceeding matters entirely non-probate or vice versa. If in the course of probate and as a part of the probate procedure the court should adjudicate controverted matters involving title the result might not stand because probate is essentially in rem. But if the parties were all before the court and the pleadings contained all the allegations necessary to invoke the jurisdiction to try title and the court tried it as an action to quiet title, the mere fact that it was captioned in probate would not make the judgment invalid. The distinction between a case where the probate division tries in probate a matter which could never be there tried, and a civil matter as such but labeled in probate seems to be the explanation of the apparent conflict between *Gee* v. *Baum,* supra, [58 Utah 445, 199 P. 680], and *In re Thompson's Estate,* supra. * * *"

In this case it was only necessary for the court to deal with the pleadings, and the parties before the court. The question of which division could try the matter was never reached. However, the principles enunciated above can be applied to pleadings. In this connection the matter was entitled "in probate," but the petition alleged facts showing a non-probate action. At the most, this would require only a ministerial change in the clerk's office. The court had jurisdiction to hear and determine the arguments on demurrer, inasmuch as the parties were properly before the court, and, if the pleadings were adequate, (a question which will be treated later in this opinion) then the court had the duty to determine which division was the proper one to dispose of the matter on the merits. It clearly is a non-probate matter which is labeled a probate matter and therefore would fall under classification (2) set out

above. Even though the suit was mislabeled, the executrix and trustee appeared generally and so the court was not without power to proceed. It had the power to require correction of the label and should have done so.

In the action of *Nielson's Estate* v. *Nielson*, 107 Utah 564, 573, 155 P. 2d 968, at page 972, Mr. Justice McDonough speaking for the court said:

"The statutes cited by appellants do not contemplate that the filing of objections to a petition in probate, alters the nature of a case as a probate matter. Such statutes do not require that some judge other than the one hearing probate causes try issues of fact. As pointed out in *Re Thompson's Estate*, 72 Utah 17, 33, 269 P. 103, 108: 'We in this state have no independent probate or surrogate court. Our district courts, courts of general jurisdiction are clothed with power to exercise, and exercise under our probate code, all probate powers and judicial functions.* * *'

"The statutes in question contemplate that when an issue of fact arises, as distinguished from a matter of judicial discretion, such issue of fact shall *be tried in conformity with the requirements of the Code of Civil Procedure, to allow the adverse party to challenge the sufficiency of pleadings by motion or demurrer, to grant parties a hearing on the issues, including the right to present evidence, and to cross-examine witnesses produced by the other side.* In *McLaren* v. *McLaren*, 99 Utah 340, 106 P. 2d 766, relied upon by appellant, we held that when issues of fact arise in a probate cause, the court should determine such issues according to the Code of Civil Procedure, but that it is not necessary to commence a new or independent action between the contesting parties,* * *" (Italics ours.)

That action involved an objection to confirmation of the sale of personal property and was an action solely in probate. The rule announced in that case is in conformity with the *McLaren* case and is authority for holding that the court has jurisdiction to hear and determine issues of fact in probate matters if the pleadings are sufficient to raise issues and they are tried in conformity with the Code of Civil Procedure.

The following quotation is taken from the latest pronouncement by this court, found in the case of *In re Martin Estates*, 109 Utah 131, 166 P. 2d 197, 201:

"The case of *Hampshire* v. *Woolley, Judge,* 72 Utah 106, 269 P. 135, 138, is controlling on this point. There it was held that 'under the provisions of Secs. 7733 and 7734 of the Probate Code of this state (Secs. 102-11-18, 102-11-19, U. C. A., 1943) the (Probate) court is not given the power to hear and determine the title to property where the same is held under a claim of title.' It may be necessary, as contended for by respondents, that appropriate suits to quiet title be instituted."

It will be noted in the concurring opinion in the *McLaren* case, supra, that a seeming conflict exists between the case of *Thompson's Estate,* 72 Utah 17, 269 P. 103, and the case of *Hampshire* v. *Woolley, Judge,* 72 Utah 106, 269 P. at page 137. Nevertheless, the latter case is reaffirmed as authority in the case of *In re Martin Estates,* 109 Utah 131, 166 P. 2d 197. A careful reading of these cases will lead to the conclusion that certain of the principles of law therein announced appear in conflict.

The wording in the *In re Martin* case, which reaffirmed the *Hampshire* v. *Woolley* case as authority for the proposition of law that a Probate Court could not try title to real property, was foreign to the issues involved, and unnecessary to that decision. The appeal was taken from an order appointing an administrator of joint estates. The District Court in support of its order appointing the administrator found that certain property was in possession of a third party and that it might be necessary to institute separate actions to recover possession of and to quiet title to the property. Just how or why it was error for the Court to determine the estate had sufficient interest in the property to justify the appointment of an administrator does not appear. The District Court, in that action, did not, either as a court proceeding under the probate code or the code of civil procedure, attempt to determine the title to the property. Even though the reasoning in the *Hampshire* v. *Woolley* case might be controlling, it had no application in the *Martin* case. No pleadings, other than petition for appointment of an administrator and objections to his appointment, were filed in that action; no issues raised as to the legal

owner of the property; and no jurisdiction obtained over the third party claimant; so that had the court, proceeding under either code, entered any judgment adjudicating the title to the property, the same would have been void, regardless of division.

*In re Clift's Estate*, supra, merely holds that in an action involving objection to the account of an administrator, where there is a dispute over certain items and issues are joined, the matters must be tried in conformity with the requirement of the code of civil procedure. This does not mean that the judge must change his character from that of a judge of probate court to that of a judge of civil court. It merely means that when he is hearing a contested matter arising under the probate code, the provisions of the civil code, where applicable, shall govern.

If we keep in mind the fact that there is no separate Probate Court in this state and that the District Court has original jurisdiction in matters not excepted by the constitution, we realize the question is not so much one of jurisdiction as it is one of procedure. As was said by this court in *Weyant et al.* v. *Utah Savings & Trust Co.*, 54 Utah 181, 204, 182 P. 189, 198, 9 A. L. R. 1119:

"* * * The district courts of this state are therefore invested with jurisdiction in probate matters precisely the same as they are invested with all other civil and criminal jurisdiction. They transact probate business as they do all other civil business. True, in administering estates they follow the established law and rules of procedure applicable to those matters, the same as they follow the established law and rules of procedure applicable to so-called equity or law cases. Moreover, our Constitution provides that 'there shall be but one form of action, and law and equity may be administered in the same action.' We therefore have no courts which are known as probate courts, or as law courts, or as equity courts; but we have courts possessed of general original jurisdiction, which are known as district courts. The district courts of this state, therefore, administer the estates of decedents as a part of their original jurisdiction, the same as they hear and enter judgments on promissory notes, or enter decrees in equity, foreclosing mortgages or quieting titles. * * *"

We are not here confronted with the same problem that confronts us when we deal with Federal Courts and State Courts, or District Courts and City Courts. In those instances, there arises a question of the inherent power of the court to deal with the subject matter of the action. In the present situation we more nearly approach the present day concept of the jurisdiction of Courts of Law and Equity, that is, do the pleadings entitle the moving party to relief either legal or equitable. No longer are we confronted with the dispute as to· which of these courts has jurisdiction, and no longer should we struggle with the jurisdiction of the District Courts to deal with matters in law or matters in probate. The divisions of the court can be likened to two arms. The probate arm and the civil arm. For orderly procedure it should use the most appropriate, but it has the right to use either. To give it this right there are two important requirements: (1) Have the necessary parties been given the proper notice as required by the statutes for the particular relief sought; and (2) are the procedural requirements of the proper code being complied with? If these standards are met, then the court can determine which is the appropriate arm but it cannot refuse the use of either. Had the court in this action sustained the demurrer on the grounds it did not have jurisdiction, it would have denied petitioner the use of either arm, although he was entitled to the use of one. Accordingly the court did not err in overruling the demurrer on the grounds of lack of jurisdiction, and respondent's cross assignment of error is overruled. The holdings in the *Hampshire* v. *Woolley* and *In re Martin's Estate* cases inconsistent with his decision, are overruled to the extent of the conflict.

A decree of distribution in probate proceedings after due and legal notice, by a court having jurisdiction of the subject matter, is conclusive as to the fund, property, items and matters covered by and properly included within the decree, until set aside or modified by the court entering the decree in the manner prescribed

by law, or until reversed on appeal. See *In re Evans et al.*, 42 Utah 282, 130 P. 217.

In the case of *In re Raleigh's Estate*, 48 Utah 128, 158 P. 705, 709, this court held that an executor's or administrator's account has the same force and effect as a final judgment and is conclusive as to all items included therein, where the statutory requirement of notice has been complied with, and where, as here, the heir is not laboring under some legal disability. Further, in connection with the procedure to assail an account, the court said:

"It is apparent, therefore, that an executor's or administrator's account which has been allowed can be assailed only in equity and upon the same grounds as other judgments. * * *"

Section 102-11-37, U. C. A. 1943, provides as follows:

"The settlement of the account, and the allowance thereof by the court or upon appeal, is conclusive against all persons in any way interested in the estate, saving, however, to all persons laboring under any legal disability their right to move for cause to reopen and examine the account, or to proceed by action against the executor or administrator, either individually or upon his bond, at any time before final distribution * * *."

This section and the two quoted cases do not hold that a person defrauded by the acts of an executor or administrator is without a means to correct the injustice. Section 102-14-23, U. C. A. 1943, sets out a remedy to the person so injured:

"Mistakes in settlement may be corrected at any time before final settlement and discharge, and after that time by an action in equity, on such showing as will justify the interference of the court."

Being limited to his relief in equity, has the petitioner stated facts in his petition sufficient to constitute a cause of action against the executrix and trustee? To do this he must allege facts to show fraudulent acts or conduct on the part of the executrix sufficient to establish ■ "extrinsic" fraud. This court in the case of *Logan*

*City* v. *Utah Power & Light Company*, 86 Utah 340, 16 P. 2d 1097, 1100, fully sets forth the principles controlling in an action of this nature:

"* * * In the absence of statutory provisions prescribing the grounds upon which a judgment may be vacated, it is quite generally held that a judgment may be vacated for fraud only when such fraud is extrinsic or collateral to the matter tried in the cause in which the judgment sought to be vacated is rendered. A leading case supporting such rule is that of *United States* v. *Throckmorton*, 98 U. S. 61, 65, 25 L. Ed. 93. It is there said that: * * *

" 'But there is an admitted exception to this general rule in cases where, by reason of something done by the successful party to a suit, there was in fact no adversary trial or decision of the issue in the case. Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side— these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing. See Wells, Res Adjudicata, Sec. 499; *Pearce* v. *Olney*, 20 Conn. 544; *Wierich* v. *De Zoya*, 7 Ill., 2 Gilman, 385; *Kent* v. *Richards*, 3 Md. Ch. 392; *Smith* v. *Lowry*, 1 Johns, Ch., N. Y. 320; *De Louis et al.* v. *Meek et al.*, 2 Iowa, G. Greene, 55, 50 Am. Dec. 491.

" 'In all these cases, and many others which have been examined, relief has been granted, on the ground that, by some fraud practised directly upon the party seeking relief against the judgment or decree, that party has been prevented from presenting all of his case to the court'."

Equity will relieve one seeking relief from the effect of a judgment or decree procured by conduct of the successful party which prevents the injured party from appearing at the hearing or trial on the merits. Under the present state of the record, this court must assume the executrix knowingly and wilfully made misrepresentations to the petitioner which prevented him from appearing at

the hearing and obtaining the property that he claims should have been his. Predicated on these alleged fraudulent acts, petitioner was denied his day in court.

As noted by Cooley in his Law of Torts, 3rd Edition, page 934, on the subject of "Wrongs by Deception."

"* * * It can never be either wise or safe to mark out specific boundaries within which deceits shall be dealt with, but beyond which they shall have impunity; but each case must be considered on its own facts, and every case will have peculiarities of its own, by which it may be judged."

Judged by the allegations of the petition in this action, petitioner has been deceived to his prejudice, and a grave injustice would be perpetrated if petitioner could establish the alleged facts yet was denied the opportunity of proving them.

The record does not disclose the reason why the trial court concluded the petition did not state sufficient facts to constitute a cause of action. Regardless of the reason, the trial judge must have decided that the deficiency could not be cured by amendment, as the action was dismissed. With this holding we cannot agree.

The order sustaining the demurrer and dismissing the action is reversed and the cause remanded for further preceedings not inconsistent with this opinion. Petitioner should be granted a reasonable time to make appropriate amendments. Costs to appellant.

McDONOUGH, C. J., and PRATT and WADE, JJ., concur.

WOLFE, J., not participating.