Sandra ST. PIERRE, Plaintiff and Appellant,

v.

Stanley W. EDMONDS, Defendant and Respondent.

No. 17075.

Supreme Court of Utah.

March 19, 1982.

---

David Nuffer, St. George, for plaintiff and appellant.

Phillip L. Foremaster, St. George, for defendant and respondent.

STEWART, Justice:

Plaintiff appeals the district court's order dismissing her amended complaint for failure to state a claim upon which relief may be granted. We reverse and remand for further proceedings.

In reviewing the dismissal of a complaint for failure to state a claim, we assume the

plaintiff's allegations to be true and construe them and the reasonable inferences arising therefrom liberally in determining whether a claim for relief has been stated. *Barrus v. Wilkinson*, 16 Utah 2d 204, 398 P.2d 207 (1965); *Heathman v. Hatch*, 13 Utah 2d 266, 372 P.2d 990 (1962).

On March 23, 1978, a complaint seeking a divorce and a division of the marital estate was filed. Sandra Edmonds (now St. Pierre) was the named plaintiff and Stanley W. Edmonds the named defendant. Edmonds' attorney drafted the original divorce pleadings naming St. Pierre as the complaining party. Edmonds executed and filed an acknowledgment of service, consent to default, and a waiver of appearance in the original action; and both parties entered into a property settlement agreement.

On April 11, 1978, the court entered a default judgment against Edmonds. On April 21, 1978, another attorney retained by Edmonds appeared before the district court and moved to withdraw Edmonds' consent to the default and filed an answer and counterclaim, an acknowledgment, a consent and waiver signed by St. Pierre, and a property settlement stipulation executed by both parties. The stipulation greatly reduced the property awarded St. Pierre. Based on these documents, the court granted the divorce and divided the marital estate according to the terms of the stipulation.

On January 14, 1980, St. Pierre initiated this action. In an amended complaint, she alleges that Edmonds used harassment, threats of bodily harm and physical abuse, and intimidation to force her to sign the documents which resulted in substantially reducing her share in the property settlement in the divorce action and in preventing her from contesting the allegations in the divorce complaint. By way of relief, she seeks damages in the amount of that portion of the marital estate that she claims she should have had, i.e., $150,000, or, alternatively, imposition of a constructive trust on the defendant's property. She also seeks, in the alternative, an order setting aside the property division in the decree and a new distribution of the marital assets as provided in the first property settlement agreement.

In dismissing the complaint, the district court stated:

> ... it appear[ed] to the Court that the First Cause of Action represents facts which, if substantiated by credible evidence would support intrinsic fraud upon the Court in Civil No. 6665, *Sandra Edmonds v. Stanley W. Edmonds*, divorce action, and more properly heard under 30-3-5, subparagraph 1, Utah Code Annotated, 1953, as amended, in a divorce case ....

In this action plaintiff alleged common law claims which were independent claims for relief, in addition to the attempt to modify the divorce decree itself. Clearly she was not entitled to a modification of the divorce decree pursuant to § 30-3-5. Although a court has continuing jurisdiction over its decree in a divorce proceeding for alimony, support, and the division of property,[1] a motion to modify the decree must be made in the original action and allege changed circumstances sufficient to warrant a reopening. *Crofts v. Crofts*, 21 Utah 2d 332, 445 P.2d 701 (1968). The plaintiff in this action did not plead a change in circumstances and therefore was not entitled to have the decree modified. Nor could plaintiff obtain relief based on Rule 60(b) of the Utah Rules of Civil Procedure because the time had expired for filing a motion to set the decree aside.

Rule 60(b) authorizes the trial court, on motion, to relieve a party from a final

---

1. In *Land v. Land*, Utah, 605 P.2d 1248 at 1251 (1980), we held that a decree for the division of property based on a voluntary stipulation may be modified only in unusual circumstances not present here. The Court stated:

   ... Accordingly, the law limits the continuing jurisdiction of the court where a property settlement agreement has been incorporated into the decree, and the outright abrogation of the provisions of such an agreement is only to be resorted to with great reluctance and for compelling reasons.

judgment or a decree procured by fraud, whether intrinsic or extrinsic, but only if the motion is made within three months after the judgment. That rule, with its short time limitation, does not, however, limit the power of a court to entertain an independent common law action to set aside a judgment or decree for fraud or duress after the three-month period has expired. Indeed, Rule 60(b) expressly recognizes and preserves the court's historic powers to relieve a party from the operations of an unconscionable judgment or order. "It remains clear, as it has from the beginning, that Rule 60(b) does not limit the power of a court to entertain an independent action." 7 Moore's Federal Practice, § 60.31 at 502 (2d ed. 1979).

The well established and fundamental doctrines designed to establish the stability of judgments and decrees must yield to the overriding principle that in our system of justice the essential integrity of the adjudicatory process must be preserved. One who would destroy that integrity cannot plead as a defense that his fraud on the system of justice must be protected in the name of preserving judgments. Thus, it has long been recognized by state and federal courts alike that an independent equitable action for relief from a prior judgment is available in addition to those remedies afforded under Rule 60(b). E.g., *Bizzell v. Hemingway*, 548 F.2d 505 (4th Cir. 1977); *Kodekey Electronics Inc. v. Mechanex Corporation*, 500 F.2d 110 (10th Cir. 1974); *Anderson v. State Department of Highways*, Alaska, 584 P.2d 537 (1978); *Perper v. Pima County*, 123 Ariz. 439, 600 P.2d 52 (1979); *Dudley v. Keller*, 33 Colo.App. 320, 521 P.2d 175 (1974); *Compton v. Compton*, 101 Idaho 328, 612 P.2d 1175 (1980); *Selway v. Burns*, 150 Mont. 1, 429 P.2d 640 (1967); *Dunham v. First National Bank in Sioux Falls*, 86 S.D. 727, 201 N.W.2d 227 (1972); *Jerkins v. McKinney*, Tenn., 533 S.W.2d 275 (1976). See also 11 Wright and Miller, Federal Practice and Procedure, § 2868 (1973); 7 Moore's Federal Practice, §§ 60.31, 60.36 (2d ed. 1979); Moore, *Federal Relief from Civil Judgments*, 55 Yale L.J. 623 (1946).

■ Nonetheless, even when there is fraud in obtaining a judgment, there must be some limit on the bringing of an action to set the judgment aside. The time limitation in Rule 60(b), however, does not control the filing of an independent action. Rather, the doctrine of laches and other equitable principles determine the time within which the action must be brought. E.g., *Compton v. Compton, supra; Selway v. Burns, supra; Dunham v. First National Bank in Sioux Falls, supra*; 7 Moore's Federal Practice, § 60.33 (2d ed. 1979); 11 Wright & Miller, Federal Practice and Procedure, § 2868 (1973).

The availability of an independent action for setting aside a judgment has been said to rest on whether the fraud alleged is "intrinsic" or "extrinsic." The distinction between extrinsic and intrinsic fraud originated in *United States v. Throckmorton*, 98 U.S. 61, 25 L.Ed. 93 (1878), where the Court held that the fraud that was the basis of an independent action for relief must be extrinsic rather than intrinsic. However, thirteen years later, *Marshall v. Holmes*, 141 U.S. 589, 12 S.Ct. 62, 35 L.Ed. 870 (1891), declared the "settled doctrine" that relief from a prior judgment would lie whenever it is "against conscience to execute a judgment" and the party seeking relief is without fault.

■ Extrinsic fraud arises from acts preventing the fair submission of the case for adjudication. *Clissold v. Clissold*, 30 Utah 2d 430, 519 P.2d 241 (1974); *Auerbach v. Samuels*, 10 Utah 2d 152, 349 P.2d 1112 (1960). Intrinsic fraud refers to matters occurring during the course of the proceedings, such as false testimony during the trial, which may have influenced the judgment. *Clissold v. Clissold, supra, Crouch v. McGaw*, 134 Tex. 633, 138 S.W.2d 94 (1940). Needless to say, the line between the two is neither straight nor bright.

We recognize that a number of courts continue to adhere to the *Throckmorton* distinction between extrinsic and intrinsic fraud. However, a number of other courts have abandoned the distinction and recognize an independent claim for relief from

judgments for both extrinsic and intrinsic fraud. E.g., *Bussey v. Bussey*, 95 N.H. 349, 64 A.2d 4 (1949) (divorce case). *Boring v. Ott*, 138 Wis. 260, 119 N.W. 865 (1909), (approved in 22 Harv.L.Rev. 600 (1909)); *Laun v. Kipp*, 155 Wis. 347, 145 N.W. 183 (1914). *Publicker v. Shallcross*, 106 F.2d 949, 952 (3rd Cir. 1939), cert. denied, 308 U.S. 624, 60 S.Ct. 379, 84 L.Ed. 521 (1940).

■ Drawing a distinction between extrinsic and intrinsic fraud in deciding whether an independent action for relief from a prior judgment lies, has little merit. Professors Wright and Miller state that, "[s]ince there is 'little real basis for the distinction between extrinsic and intrinsic fraud,' it would be unfortunate if the ancient learning on this point were to be resurrected as a limitation on independent actions now that it is at last decently buried with regards to motions." [Footnotes omitted.] 11 Wright & Miller, § 2861 at 196 (1931). A survey of the cases supports the observation that:

> The perpetuation of this extrinsic-intrinsic distinction has led the federal courts into a thicket of inconsistency, because the distinction is unnecessary, often irrational, and potentially productive of injustices not outweighed by the interests of finality. [Rule 60(b): Survey and Proposal for General Reform, 60 Cal.L.Rev. 531, 542 (1972).]

We agree that the extrinsic-intrinsic distinction fails to provide a rational basis for the harsh legal consequences which flow from it. We, therefore, decline to determine whether the allegations in the complaint constitute the equivalent of extrinsic or intrinsic fraud and hold that the distinction should be abandoned in determining when an independent action may lie to set aside a judgment or decree on the ground that it was obtained by fraud.[2]

Plaintiff alleges that her waiver of appearance and her execution of the second settlement agreement resulted directly from physical and mental intimidation directed at her by Edmonds. Relying on the alleged acknowledgment, waiver and consent, the district court granted Edmonds a default divorce and divided the marital property pursuant to the agreement tendered by him. Assuming plaintiff's allegations to be true, as we must at this point, she was prevented by defendant's duress from presenting her evidence to the trial court in the divorce proceeding.

■ An intentional act by a party in a divorce action which prevents the opposing party from making a full defense "amounts to fraud upon the opposing party, as well as upon justice, justifying a court in setting aside the decree so obtained." [Citations omitted.] *Berg v. Berg*, 227 Minn. 173, 175, 34 N.W.2d 722, 724 (1948). Duress and fraud are commonly held sufficient to vacate a property settlement in a divorce decree. *Cary v. Cary*, 257 Ala. 431, 59 So.2d 659 (1952). "Public interest requires that no spouse be defrauded or coerced by the other in obtaining a decree of divorce." *Guzzo v. Guzzo*, 269 Wis. 21, 28–29, 68 N.W.2d 559, 563 (1955). In Anno. 157 A.L.R. 6, 80 (1945) it is stated:

> Duress as a ground for setting aside a default judgment of divorce has been frequently bracketed by the courts with fraud. Generally speaking, the courts will, as in the case of fraud . . . exercise their power and set aside a judgment obtained by duress.

■ When fraud or duress are properly pleaded, it is not important whether the decree is entered after litigation or by consent. *Civic Western Corporation v. Zila Industries, Inc.*, 66 Cal.App.3d 1, 135 Cal. Rptr. 915 (1977); *Parke v. Parke*, 72 Idaho 435, 242 P.2d 860, 863 (1952).

■ The claim in this case is for damages and in the alternative for a constructive trust to be imposed on the assets awarded defendant that had been part of the marital estate. In a narrow sense, therefore, the claim for relief does not seek to set the

---

**2.** To the extent that *Clissold v. Clissold*, 30 Utah 2d 430, 519 P.2d 241 (1974) is contrary to this holding, it is overruled.

decree aside, although it is clear that the action attacks the property distribution made under the decree and therefore the decree itself. Since, as we have held, a claim for relief was stated that could have resulted in setting the decree aside, it follows that the less drastic remedy sought in this case does not preclude the action. In sum, plaintiff's allegations of duress state a claim upon which relief could be granted.

Affirmed as to the motion to modify and reversed in all other respects and remanded for further proceedings. Costs to appellant.

HALL, C. J., and OAKS and HOWE, JJ., concur.

DURHAM, J., does not participate herein.